UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

JOHN MONTALBANO,                                        10 CIV 5973 (JGK)

                          Plaintiff,


                v.


THE PORT AUTHORITY OF NEW YORK AND
NEW JERSEY; DR. DORIS FRANCIS,
INDIVIDUALLY; DR. FRANCINE SILVER,
INDIVIDUALLY; INSPECTOR MICHAEL
GUARNIERI, INDIVIDUALLY; SGT. KENNETH
KOHLMANN, INDIVIDUALLY,

                          Defendants.

--------------------------------------------------------------------X




**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION FOR SUMMARY
JUDGMENT DISMISSING THE COMPLAINT AGAINST DEFENDANTS, THE PORT
AUTHORITY OF NEW YORK AND NEW JERSEY,
DR. DORIS FRANCIS, DR. FRANCINE SILVER, SERGEANT KENNETH
KOHLMANN AND INSPECTOR MICHAEL GUARNIERI**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS .........................................................................................2

POINT I

    Plaintiff's § 1983 Claims Brought Under The Due Process Clause Of The Fourteenth
    Amendment Of The United States Constitution Against The Port Authority, Dr.
    Francis And Dr. Silver Should Be Dismissed Since Plaintiff Cannot Show The
    Deprivation Of A Federally Protected Right ..............................................................5

    A.    Summary Judgment Standard ........................................................................5

    B.    Plaintiff Must Show That a Federally Protected Right Has Been Violated.....................5

        (i)    Plaintiff Cannot Show a Violation of a Substantive Due Process Right
            Because He Has No Constitutionally Protected Right in His Job as a
            Police Officer ...........................................................................6

        (ii)    Even Assuming Plaintiff Could Show a Federally Protected Right Was
            at Issue, He Cannot Make Out a Procedural Due Process Claim Since He
            Had Available Remedies Which He Failed to Pursue .............................9

    C.    Plaintiff Cannot Show That There Was a Policy or Practice, For Purposes of
        Holding the Port Authority Liable Under 42 U.S.C. § 1983 .........................................11

POINT II

    Plaintiff's Claims Brought Under The Second And Fourteenth Amendments Of The
    United States Constitution Against The Port Authority Should Be Dismissed......................12

POINT III

    Plaintiff's Negligence Claims Against The Port Authority, Dr. Francis And Dr. Silver
    Should Be Dismissed Since They Owed Plaintiff No Duty ...................................................14

POINT IV

    Plaintiff's Defamation Claims Against Sergeant Kohlmann And Inspector Guarnieri
    Are Legally Insufficient And Should Be Dismissed.............................................................15

CONCLUSION.........................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Adams v. New York State Educ. Dept.*,
  752 F. Supp. 2d 420 (S.D.N.Y. 2010)......................................................................9

*Albert v. Loksen*,
  239 F.3d 256 (2d Cir. 2001)..............................................................................16

*Alfaro v. Wal-Mart Stores, Inc.*,
  210 F.3d 111 (2d Cir. 2000)..............................................................................14

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).........................................................................................5

*Back v. Hastings on Hudson Union Free Sch. Dist.*,
  365 F.3d 107 (2d Cir. 2004)................................................................................6

*Benzman v. Whitman*,
  523 F.3d 119 (2d Cir. 2008)................................................................................6

*Board of County Commissioners of Bryan County v. Brown*,
  520 U.S. 397 (1997).......................................................................................11

*Boss v. Kelly*,
  2007 WL 2412261 (S.D.N.Y. Aug. 23, 2007).................................................6, 9

*Boss v. Kelly*,
  2009 WL 76501 (2d Cir. Jan. 13, 2009) ........................................................8, 9

*Box Tree South, Ltd. v. Bitterman*,
  873 F. Supp. 883, 844 (S.D.N.Y. 1995).........................................................16

*Byrnie v. Town of Cromwell Bd. of Education*,
  243 F.3d 93 (2d Cir. 2001).................................................................................5

*Campo v. New York City Employees' Retirement Sys.*,
  843 F.2d 96, (2d Cir. 1988)..............................................................................10

*Chase Group Alliance LLC v. City of New York Dep't of Fin.*,
  620 F.3d 146 (2d Cir. 2010).................................................................................9

*City of Canton v. Harris*,
  489 U.S. 378 (1989).......................................................................................11

*City of St. Louis v. Praprotnik*,
  485 U.S. 112 (1985).......................................................................................12

*Cleveland Bd. of Educ. v. Loudermill,*
470 U.S. 532 (1985)..................................................................9

*District of Columbia v. Heller,*
554 U.S. 570 (2008)................................................................13

*Ello v. Singh,*
531 F. Supp. 2d 552 (S.D.N.Y. 2007).............................................16, 17

*Emblem v. Port Authority of New York and New Jersey,*
2002 WL 498634 (S.D.N.Y. March 29, 2002) .....................................12

*Emmerling v. Town of Richmond,*
2010 WL 2998911 (W.D.N.Y. July 27, 2010)......................................7

*Farrell v. Burke,*
449 F.3d 470 (2d Cir. 2006)........................................................6

*Finley v. Giacobbe,*
79 F.3d 1285 (2d Cir. 1996)......................................................9, 11

*Forrester v. Zwanger-Pesiri Radiology Group,*
274 A.D.2d 374 (2d Dep't 2000)...................................................14

*Fujitsu Ltd. v. Federal Express Corp.,*
247 F.3d 423 (2d Cir. 2002)........................................................5

*Golden v. Stiso,*
279 A.D.2d 607, 720 N.Y.S.2d 164 (2d Dep't 2001) ...........................17

*Green v. City of New York,*
2009 WL 3319356 (E.D.N.Y. Oct. 14, 2009)......................................8

*Gudema v. Nassau County,*
163 F.3d 717 (2d Cir. 1998)........................................................10

*Hairston v. Bancorp Inc.,*
1992 WL 368789 at *2 (N.Y. Sup.Ct. April 15, 1992); ........................16

*Harrah Indep. Sch. Dist. v. Martin,*
440 U.S. 194 (1978)..................................................................7

*Hellenic Am. Neighborhood Action Comm. v. City of N.Y.,*
101 F.3d 877 (2d Cir. 1996).......................................................10

*Jeffreys v. The City of New York,*
426 F.3d 549 (2d Cir. 2005).........................................................5

iii

*Katz v. Klehammer*,
    902 F.2d 204 (2d Cir. 1990)......................................................................................10

*Keough v. Texaco, Inc.*,
    1999 WL 61836 (S.D.N.Y. Feb. 10, 1999).............................................................16

*Kirby v. Yonkers School District*,
    2011 WL 721297 (S.D.N.Y. Feb. 11, 2011)..............................................................6

*Kraebel v. The Commissioner of the New York State Division of Housing and Community*
    *Renewal*,
    2000 WL 91930 (S.D.N.Y. Jan. 26, 2000) .............................................................10

*Lee v. City of New York*,
    162 A.D.2d 34 (2d Dep't 1990) ...............................................................................14

*Liotta v. Rent Guidelines Bd. for City of N.Y.*,
    547 F. Supp. 800 (S.D.N.Y. 1982)...........................................................................10

*Local 342, Long Island Public Service Employees v. Town Board*,
    31 F.3d 1191 (2d Cir. 1994)........................................................................................7

*Lowrance v. Achtyl*,
    20 F.3d 529 (2d Cir. 1994)..........................................................................................7

*Mack v. The Port Authority et al.*,
    225 F. Supp. 2d 376 (S.D.N.Y. 2002).......................................................................11

*Mandelblatt v. Perelman*,
    683 F. Supp. 379 (S.D.N.Y. 1988)...........................................................................16

*Massachusetts Bd. of Retirement v. Murgia*,
    427 U.S. 307 (1976)......................................................................................................7

McDonald v. City of Chicago,
    Ill., --- U.S. ---, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010) ....................................13

*McNulty v. City of New York*,
    100 N.Y.2d 227 (N.Y. 2003) ....................................................................................14

*Mignault v. Ledyard Public Schools*,
    2011 WL 1870244 (D.Conn. May 16, 2011).............................................................7

*Monell v. Department of Social Services*,
    436 U.S. 658 (1978)...............................................................................................11, 12

*Narumanchi v. Board of Trustees*,
    850 F.2d 70 (1988)........................................................................................................9

iv

*Natalie v. Town of Ridgefield*,
170 F.3d 258 (2d Cir. 1999)........................................................................................5

*O'Connor v. Pierson*,
426 F.3d 187 (2d Cir. 2005)........................................................................................6

*Oklahoma City v. Tuttle*,
471 U.S. 808 (1985)..................................................................................................11

*Patterson v. County of Oneida, N.Y.*,
375 F.3d 206 (2d Cir. 2004)........................................................................................6

*Ramos v. New York City Dept. of Correction*,
2006 WL 1120631 (E.D.N.Y. Apr. 26, 2006) .............................................................8

*Sykes v. James*,
13 F.3d 515 (2d Cir. 1993), *cert. denied,* 512 U.S. 1240, 114 S. Ct. 2749 (1994)...................6

*Tessler v. Patterson*,
2011 WL 1044208 (S.D.N.Y. Mar. 11, 2011) ...........................................................7

*Thai v. Cayre Group, Ltd.*,
No. 10 Civ. 269 (SAS), 2010 WL 2710615, at *3 (S.D.N.Y. July 8, 2010)...........................17

*Vaughn v. American Multi Cinema, Inc.*,
2010 WL 3835191 (S.D.N.Y. Sept. 13, 2010)..................................................16, 17

*Violandi v. City of New York*,
184 A.D.2d 364 (1st Dep't 1992) ..............................................................................14

*Vippolis v. Village of Haverstraw*,
768 F.2d 40 (2d Cir. 1985)........................................................................................11

*Walker v. City of Waterbury*,
2010 WL 114186 (2d Cir. Jan. 13, 2010) ...................................................................7

*Wehringer v. Allen-Stevenson School*,
360 N.Y.S.2d 429 (N.Y.A.D. 1974) aff'd, 340 N.E.2d 478 (N.Y. 1975) ..............................16

*Wright v. Smith*,
21 F.3d 496 (2d Cir. 1994).........................................................................................6

## FEDERAL STATUTES

42 U.S.C. § 1983.....................................................................................................1, 5, 6

## RULES

Fed. R. Civ. P. 56.........................................................................................................1

Fed. R. Civ. P. 56(c)(2) ................................................................................................5

Rule 56.1 .......................................................................................................................4

**CONSTITUTIONAL PROVISIONS**

U.S. Const., Amendment II ......................................................................................12, 13

U.S. Const., Amendment XIV .............................................................................1, 8, 12

**OTHER AUTHORITIES**

C.P.L.R. Article 78 ...............................................................................................4, 9, 10

## PRELIMINARY STATEMENT

The Port Authority of New York and New Jersey (the "Port Authority"), Dr. Doris Francis ("Dr. Francis"), Dr. Francine Silver ("Dr. Silver"), Sergeant Kenneth Kohlmann ("Sgt. Kohlmann") and Inspector Michael Guarnieri ("Inspector Guarnieri") (collectively, the "Defendants") submit this memorandum of law in support of their motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Plaintiff, John Montalbano, a retired Port Authority police officer ("Plaintiff"), commenced this action challenging a firearms restriction that he received in connection with his employment with the Port Authority, from Dr. Francis and Dr. Silver. Plaintiff's complaint alleges constitutional violations by the Port Authority, Dr. Francis and Dr. Silver under 42 U.S.C. § 1983 ("§ 1983") of his substantive and procedural due process rights under the Fourteenth Amendment and violations of his rights under the Second Amendment as applied through the Fourteenth Amendment.  Plaintiff also asserts state law negligence claims against the Port Authority, Dr. Francis and Dr. Silver, as well as defamation claims against Sgt. Kohlmann and Inspector Guarnieri.

Plaintiff's claims under § 1983 are legally deficient.  First, Plaintiff cannot show that the Port Authority, Dr. Francis or Dr. Silver violated his rights pursuant to the Due Process Clause of the Fourteenth Amendment of the United States Constitution because he had adequate procedural due process protection in his employment.  Plaintiff's gun restriction was a condition of his employment and is not a protected property interest under the Fourteenth Amendment. Plaintiff's claim under the Second and Fourteenth Amendments should also be dismissed because the Port Authority was not regulating his right to bear arms except in connection with his employment.  Plaintiff's state law claims should be dismissed because Dr. Francis and Dr. Silver owed no duty to plaintiff that could, on the facts here, give rise to a negligence claim. Finally, the defamation claims against Plaintiff's supervisors, Sgt. Kohlmann and Inspector

Guarnieri should also be dismissed since the reports at issue were job related assessments protected by qualified privilege.

## STATEMENT OF FACTS

The facts relevant to this motion are set forth in the Port Authority's Rule 56.1 Statement ("56.1 St.") and the Declaration of David R. Kromm certifying the record ("Kromm Decl.") and the exhibits attached thereto.   For the Court's convenience, the pertinent facts are set forth herein.

The Port Authority is a body corporate and politic created by compact between the States of New York and New Jersey with the consent of the Congress of the United States.  *See* 56.1 St., ¶ 3.  The Port Authority has an Office of Medical Services ("OMS"), which employs both salaried and contract professionals to make determinations with respect to fitness for duty and, where appropriate, place work-related restrictions on Port Authority employees.  *Id.* at ¶ 4.  The Port Authority has a Public Safety Department ("PAPD"), which employs police officers to patrol its transportation facilities and protect the public's safety.  *Id.* at ¶ 5.  PAPD issues a firearm to each police officer as part of their standard equipment.  *See* Montalbano tr. 87-88, Exhibit "A" to Kromm Decl.

Plaintiff is a retired police officer with the PAPD.  *Id.* at ¶ 25.  On March 9, 2009, Plaintiff and his supervisor, Sgt. Kohlmann, were involved in an incident at Building 254 at John F. Kennedy International Airport ("JFK"), County of Queens, State of New York.  *Id.* at ¶ 12. The incident began when Sgt. Kohlmann told Plaintiff that he was not keeping the Port Authority police vehicles properly fueled.  *Id.*  The incident escalated to a point where Sgt. Kohlmann observed Plaintiff make an inappropriate gesture with a folding knife. *See* Kohlmann tr. 18-19, Exhibit "D" to Kromm Decl.; *see also* 56.1 St., ¶ 13.  Thereafter, Sgt Kohlmann submitted a handwritten report regarding the incident.  *See* 56.1 St., ¶ 13.  On March 10, 2009, Plaintiff was

directed to an OMS psychologist for evaluation and had an appointment with Dr. Silver. *Id*. at ¶ 14.  After the appointment, Plaintiff returned to work with the same job, same hours and same pay, but was transferred to Building 269, the central police building at JFK where he would be under the supervision of a different sergeant.  *Id*. at ¶ 15.

On August 12, 2009, officers from the New York City Police Department ("NYPD") responded to Plaintiff's home due to a domestic incident involving Plaintiff's family.  *Id*. at ¶ 16; *see also* Domestic Incident Report dated August 12, 2009, Exhibit "L" to Kromm Decl.; Complaint Report dated August 12, 2009, Exhibit "M" to Kromm Decl.; August 12, 2009 911 radio transmissions, Exhibit "N" to Kromm Decl.  Plaintiff's son, Anthony Montalbano, called 911 and requested that police respond to Plaintiff's home after Plaintiff hit his daughter, Jenna Montalbano.  *See id*.  According to Jenna Montalbano's signed written statement to the NYPD, Plaintiff "punched [her] in the back" and "shove[d]" her before Jenna and Anthony Montalbano ran downstairs, locked the door and called 911.  Domestic Incident Report dated August 12, 2009, Exhibit "L" to Kromm Decl.

This was the second time since 2005 the NYPD were called to Plaintiff's home due to a domestic dispute.  *See* 56.1 St., ¶ 6; *see also* Domestic Incident Report dated May 17, 2005, Exhibit "J" to Kromm Decl.; May 17, 2005 911 radio transmissions, Exhibit "K" to Kromm Decl.  On May 17, 2005, Plaintiff's daughter, Jenna Montalbano and Plaintiff's wife, Constance Montalbano, both spoke with 911 operators and stated that Plaintiff was threatening the family with a gun.  *See* May 17, 2005 911 radio transmissions, Exhibit "K" to Kromm Decl.  Constance Montalbano's signed written statement to police stated that she called the police because Plaintiff locked her and her children outside of the family home.  *See* Domestic Incident Report dated May 17, 2005, Exhibit "J" to Kromm Decl.

After the August 12, 2009 domestic incident, Plaintiff voluntarily secured his two personal firearms at Building 269, which is the police headquarters at JFK.  *See* 56.1 St., ¶ 17.  On August 17, 2009, Plaintiff was required to see Dr. Francis at OMS regarding the incident with his daughter five days earlier.  Dr. Francis found Plaintiff to be fit for duty with the restriction that he could carry firearms on duty only and recommended that Plaintiff seek individual counseling.  *See* 56.1 St., ¶ 18.  Based upon this suggestion, Plaintiff began seeing Dr. Martin Weinberg ("Dr. Weinberg"), a psychologist whom he had seen previously in connection with being hospitalized with an intestinal condition.  *Id*. at ¶¶ 19-20.  Plaintiff admitted that sessions with Dr. Weinberg centered on the gun restriction and his belief Dr. Francis and Dr. Silver were harassing him, whereas the domestic incidents with his family were discussed intermittently.  *Id*. at ¶ 20.  Plaintiff continued to meet with Dr. Francis approximately once a week until October 22, 2009, when he requested to see a different psychologist from OMS.  *Id*. at ¶ 21.  On October 30, 2009, Plaintiff met with Dr. Silver, who continued Plaintiff's gun restriction.  *Id*. at ¶ 22.  Plaintiff and Dr. Silver met for approximately four additional appointments after October 30, 2009.  *Id*. at ¶ 22.

On January 19, 2010, Plaintiff retired from the Port Authority without modification of his employment-related gun restriction.  *Id*. at ¶¶ 25-26.  Plaintiff, a member of the Patrolman's Benevolent Association union, never filed a grievance in connection with his gun restriction.  *Id*. at ¶ 24.  Prior to the commencement of this lawsuit, Plaintiff never sought to challenge his employment-related gun restriction through an Article 78 proceeding in New York State courts.  *Id*. at ¶ 27.

### POINT I

### PLAINTIFF'S § 1983 CLAIMS BROUGHT UNDER THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AGAINST THE PORT AUTHORITY, DR. FRANCIS AND DR. SILVER SHOULD BE DISMISSED SINCE PLAINTIFF CANNOT SHOW THE DEPRIVATION OF A FEDERALLY PROTECTED RIGHT

#### A.  Summary Judgment Standard

The court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  In order to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact.  *See Jeffreys v. The City of New York*, 426 F.3d 549, 554 (2d Cir. 2005).  This requires more than "conclusory allegations or unsubstantiated speculation."  *Id*. at 554 (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2002)).  The non-movant must offer sufficient evidence to enable a reasonable jury to return a verdict in its favor.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Byrnie v. Town of Cromwell Bd. of Education*, 243 F.3d 93, 101 (2d Cir. 2001).

#### B.  Plaintiff Must Show That a Federally Protected Right Has Been Violated

§ 1983 creates a cause of action for anyone subjected "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under color of state law.  42 U.S.C. § 1983.  To prevail in a § 1983 action alleging a violation of plaintiff's due process rights, plaintiff must demonstrate "the existence of a federally protectable property right and the denial of such right in the absence of either procedural or substantive due process."  *Natalie v. Town of Ridgefield*, 170 F.3d 258, 262 (2d Cir. 1999).  "Section 1983 itself," however, "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation

-5-

omitted), *cert. denied,* 512 U.S. 1240, 114 S. Ct. 2749 (1994); *see also, e.g., Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) ("Section 1983 'is not itself a source of substantive rights.' It merely provides 'a method for vindicating federal rights elsewhere conferred ....'") (citation omitted).

"In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a 'person' acting 'under the color of state law,' and (b) that the defendant caused the plaintiff to be deprived of a federal right." *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004). "[P]ersonal involvement of [individual] defendants in alleged constitutional deprivations is a pre-requisite to an award of damages under § 1983." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).

    **(i)**    **Plaintiff Cannot Show a Violation of a Substantive Due Process Right Because He Has No Constitutionally Protected Right in His Job as a Police Officer**

To prevail on a substantive due process claim, plaintiff must: "(1) establish the existence of some constitutionally-protected interest, *see O'Connor v. Pierson*, 426 F.3d 187, 201 (2d Cir. 2005); and (2) demonstrate that 'the government action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience,' *Benzman v. Whitman*, 523 F.3d 119, 126 (2d Cir. 2008)"; *Kirby v. Yonkers School District*, 2011 WL 721297, at *9 (S.D.N.Y. Feb. 11, 2011). "[T]o establish a property interest, a plaintiff must have 'more than an abstract need or desire for [the property], [ ] he must, instead, have a legitimate claim of entitlement to it under state or federal law in order to state a §1983 claim.'" *Boss v. Kelly*, 2007 WL 2412261, at *4 (S.D.N.Y. Aug. 23, 2007) (quoting *Finley v. Giacobbe*, 79 F.3d 1285, 1296 (2d Cir. 1996)). Substantive due process protects against actions by the government that are "arbitrary,

conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill-advised." *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994).

"It is well settled that, where the alleged right … cannot be considered so rooted in the traditions and conscience of our people as to be ranked as fundamental, notions of substantive due process will not apply." *Local 342, Long Island Public Service Employees v. Town Board*, 31 F.3d 1191, 1196 (2d Cir. 1994) (internal quotation marks omitted). Broadly speaking, "[t]he right to government employment is not a fundamental right." *Tessler v. Patterson*, 2011 WL 1044208, at *6 (S.D.N.Y. Mar. 11, 2011) (citing *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307 (1976) ("This Court's decisions give no support to the proposition that a right of governmental employment *per se* is fundamental.")); *see also Emmerling v. Town of Richmond*, 2010 WL 2998911, at *11 (W.D.N.Y. July 27, 2010) ("The right to continued public employment is not a fundamental property interest that is subject to Substantive Due Process protection."). Furthermore, "[g]enerally, interests related to employment are not protected" by substantive due process. *Walker v. City of Waterbury*, 2010 WL 114186, at *1 (2d Cir. Jan. 13, 2010) (citing *Harrah Indep. Sch. Dist. v. Martin*, 440 U.S. 194 (1978)); *Mignault v. Ledyard Public Schools*, 2011 WL 1870244, at *11 (D.Conn. May 16, 2011) ("[W]ith regard to a substantive due process claim, '[g]enerally, interests related to employment are not protected.'").

Plaintiff fails to identify the constitutional interest at stake in his substantive due process claim other than claiming generally that the gun restriction placed on him when he was a Port Authority employee is preventing him from obtaining a handgun license in New York City and is "preventing him from seeking security work in the private sector." *See* Kromm Decl, Ex. "G" at ¶¶ 29, 38-39. However, Plaintiff's gun restriction was a condition of his employment with the PAPD after he was involved in two domestic incidents of a physical nature with his family. *See*

56.1 St., ¶ 18.  One of these incidents involved his threatening family members with a gun.  *See* 56.1 St., ¶ 6.  Therefore, as discussed *supra*, it follows that Plaintiff's gun restriction, a condition of his employment with PAPD, did not conflict with a substantive due process right under the Fourteenth Amendment.  *See also, Boss v. Kelly*, 2009 WL 76501, at *1 (2d Cir. Jan. 13, 2009) ("[Plaintiff] has no property interest in carrying a gun in connection with his police duties.").

Plaintiff, now retired and no longer a PAPD employee, has no cognizable property interest to a retroactive mental health assessment in aid of his obtaining a gun permit.  *See e.g.*, *Boss v. Kelly*, *supra*; *Green v. City of New York*, 2009 WL 3319356, at *9 (E.D.N.Y. Oct. 14, 2009) (holding "that plaintiff's firearm qualification is not a property interest."); *Ramos v. New York City Dept. of Correction*, 2006 WL 1120631, at *8 (E.D.N.Y. Apr. 26, 2006) ("Under New York law, plaintiff does not have a 'legitimate claim of entitlement' to possessing the DOC permit to be firearm qualified).  In New York, it is well established '[t]he possession of a handgun license to carry a firearm is a privilege rather than a right." (citations omitted)).  The evidence clearly establishes that Dr. Francis and Dr. Silver appropriately determined that Plaintiff should be restricted to carrying his firearm at work.  Indeed, Plaintiff must have agreed because he voluntarily checked his personal firearms at work when his tour ended following the domestic incident of August 12, 2009.  *See* 56.1 St., ¶ 17.  Thus, the actions of Dr. Francis and Dr. Silver were not "arbitrary, conscience-shocking, or oppressive."   By Plaintiff's own admission, he was involved in two domestic incidents in his home where NYPD officers were required to respond.  *Id*. at ¶¶ 6, 16.  Plaintiff's employment-related gun restriction was based on these domestic incidents and out of concern for his family's safety. *See* Francis tr. 18, Exhibit "C" to Kromm Decl.

Dr. Francis also recommended that Plaintiff seek individual counseling, *see* 56.1 St., ¶ 17, the purpose of which was for Plaintiff "to gain some insight and use better judgment." *See* Silver tr. 43, Exhibit "B" to Kromm Decl. However, through Plaintiff's retirement in January of 2010, Plaintiff's therapy failed to result in any insight on his part and role in those earlier domestic incidents. *See* 56.1 St., ¶ 20. Moreover, Plaintiff has not provided a shred of evidence that the Port Authority's gun restriction in place during his time of employment with the Port Authority has either (a) prevented him from obtaining a gun permit in New York City or (b) prevented him from obtaining security work in the private sector.

### (ii)     Even Assuming Plaintiff Could Show a Federally Protected Right Was at Issue, He Cannot Make Out a Procedural Due Process Claim Since He Had Available Remedies Which He Failed to Pursue

Plaintiff also cannot establish a procedural due process violation. "If a constitutionally-protected interest is identified, the plaintiff must then show that he was deprived of that interest without the process that was due." *Boss v. Kelly*, 2007 WL 2412261, at *3 (S.D.N.Y. Aug. 23, 2007) (citation omitted). "'The second step of the analysis thus asks what process was due to the plaintiff, and inquires whether that constitutional minimum was provided.'" *Id.* (quoting *Narumanchi v. Board of Trustees*, 850 F.2d 70, 72 (1988). "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Adams v. New York State Educ. Dept.*, 752 F. Supp. 2d 420, 451 (S.D.N.Y. 2010) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)).

Courts in this circuit have uniformly held that the opportunity to bring a post-deprivation proceeding, such as a proceeding pursuant to C.P.L.R. Article 78, is sufficient to satisfy the constitutional mandate of due process. *See, e.g.*, *Chase Group Alliance LLC v. City of New York Dep't of Fin.*, 620 F.3d 146, 153 (2d Cir. 2010) ("[A] procedural due process violation cannot

-9-

have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies." (internal quotations omitted)).

As the District Court noted in *Kraebel v. The Commissioner of the New York State Division of Housing and Community Renewal*, 2000 WL 91930, at \*10 (S.D.N.Y. Jan. 26, 2000):

> New York's procedures for post-deprivation judicial review of administrative agency decisions, known as "Article 78" proceedings, permit litigants to address whether an administrative determination was made in violation of lawful procedure, was arbitrary or capricious or constituted an abuse of discretion. *See* N.Y. Civ. Prac. L. & R. § 7803 (McKinney 1999); *Liotta v. Rent Guidelines Bd. for City of N.Y.*, 547 F. Supp. 800, 802 (S.D.N.Y. 1982) (dismissing due process complaint on summary judgment motion where plaintiffs did not pursue Article 78 proceeding and did not challenge existing procedures). **In numerous contexts, courts have held that Article 78 proceedings satisfy the requirements of procedural due process.** *See id.*; *Birmingham,* 1999 WL 965432, at \*15 (dismissing due process claim where alleged random and unauthorized deprivation could be remedied by Article 78 proceeding); *Katz v. Klehammer*, 902 F.2d 204, 206 (2d Cir. 1990) (Article 78 proceeding adequate to address tenant's claims of building mismanagement in violation of New York City housing rules and regulations); *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 881 (2d Cir. 1996) (Article 78 proceeding satisfies due process where the alleged deprivation occurs because of random and arbitrary act); *Gudema v. Nassau County*, 163 F.3d 717, 724 (2d Cir. 1998) (Article 78 proceeding provides meaningful post-deprivation remedy where state agent acts outside his authority); *Campo v. New York City Employees' Retirement Sys.*, 843 F.2d 96, 102-03 (2d Cir. 1988) (Article 78 proceeding offers due process in meaningful time and meaningful manner). **The general rule that § 1983 does not require plaintiffs with federal or constitutional claims to first exhaust state judicial or administrative remedies does not obviate the ability of Article 78 proceedings to provide adequate postdeprivation procedures under the Due Process Clause.** *See Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 881.

*Id*. at \*10 (emphasis added).

Here, Plaintiff did not file an Article 78 proceeding or a union grievance, both constitutionally adequate processes, and hence cannot establish a procedural due process claim. *See* 56.1 St., ¶¶ 24, 27.

Further, while it is irrefutable that Dr. Francis and Dr. Silver's gun restriction determination was not arbitrary and capricious, Plaintiff, in claiming otherwise, still cannot support the proposition that the deprivation took place without due process of law.  Plaintiff cannot demonstrate a "legitimate claim of entitlement," *Finley*, 79 F.3d at 1296, to a "second chance" for a mental health evaluation.  There is no authority for Plaintiff's proposition that pistol applicants are automatically entitled to a "second chance" for mental health evaluations by former employees.  Therefore, it follows that Plaintiff does not have a protected property interest in a reevaluation of his gun restriction following his retirement from the PAPD.

### C. Plaintiff Cannot Show That There Was a Policy or Practice, For Purposes of Holding the Port Authority Liable Under 42 U.S.C. § 1983

A municipality cannot be held liable under § 1983 for the actions of its employees or agents based on the principle of *respondeat superior*.  *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).  As a bi-state agency, *Monell* has been found applicable to the Port Authority.  *See, e.g.*, *Mack v. The Port Authority et al.*, 225 F. Supp. 2d 376 (S.D.N.Y. 2002).  To hold a municipality liable as a "person" within the meaning of § 1983, a plaintiff must establish that there was a policy or practice by the municipality.  *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985); *Monell*, 436 U.S. at 690-91.  The Second Circuit has held that to establish a §1983 claim plaintiff must show "a municipal policy or custom … that caused his injuries … [and] a causal connection … 'between the policy and deprivation of his constitutional rights.'" *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n.8 (1985)).  Thus, in order to establish municipal liability, plaintiff must establish that the policy or practice was the "moving force [behind] the constitutional violation."  *Monell*, 436 U.S. at 694; s*ee also*, *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397 (1997); *City of Canton v. Harris*, 489 U.S. 378 (1989).

Where there is no written policy or procedures, plaintiff must prove the existence of an unlawful practice by subordinate officials so "permanent and well settled as to constitute a custom or usage with the force of law" *Emblem v. Port Authority of New York and New Jersey*, 2002 WL 498634 at *4 (S.D.N.Y. March 29, 2002), and that this practice was so manifest and widespread as to imply the constructive acquiescence of policy-making officials. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127-130 (1985). Here, Plaintiff has not shown any facts that, if true, would establish an official Port Authority policy or custom that caused a violation of his constitutional rights. The § 1983 claim against the Port Authority appears to be based entirely on a variety of conclusory allegations of "harassment in the workplace" that led to a gun restriction that he did not like. Kromm Decl., Ex. "G" at ¶ 3. In fact, the complaint is devoid of facts and is merely recitations of legal conclusions asserting harassment. In this case, there is not an iota of evidence that a Port Authority policy or custom exists that results in a pattern and practice of harassment against the Plaintiff.

**POINT II**

**PLAINTIFF'S CLAIMS BROUGHT UNDER THE SECOND AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AGAINST THE PORT AUTHORITY SHOULD BE DISMISSED**

Plaintiff's complaint alleges violations of the Second and Fourteenth Amendments of the United States Constitution by the Port Authority. *See* Kromm Decl., Ex. "G" at ¶¶ 32-35. The Second Amendment provides in full: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., Amend II. The Fourteenth Amendment's Due Process Clause provides that no state shall "deprive any person of life, liberty or property, without due process of law." U.S. Const., Amend. XIV.

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), while the Supreme Court recognized an "individual right to possess and carry weapons" under the Second Amendment, that right to keep and bear arms "is not unlimited." *Id.* at 592, 626. In *McDonald v. City of Chicago, Ill.*, --- U.S. ---, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010), the Supreme Court held that the Second Amendment's right to bear arms was fully applicable to the states, but reaffirmed this did not prohibit states from regulating firearms as follows:

> It is important to keep in mind that *Heller*, while striking down a law that prohibited the possession of handguns in the home, recognized that the right to keep and bear arms is not "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." 554 U.S., at ---, 128 S. Ct., at 2816. We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as "prohibitions on the possession of firearms by felons and the mentally ill," "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.*, at --- - ---, 128 S. Ct., at 2816-2817.

*Id.* at 3047. The right protected by the Second Amendment is the right to keep and bear arms in one's home, for purposes of self-defense*, see Heller*, 128 S. Ct. at 2817-18; not for purposes of seeking security work in the private sector.

The Port Authority's determination that Plaintiff would be restricted from bringing his PAPD firearm to his home applied only during his employment as a Port Authority police officer. It does not prohibit the ownership and possession of a firearm in his home for any purpose whatsoever now that he is retired. *See* 56.1 St., ¶18. Accordingly, the Port Authority's mental health assessment of Plaintiff was for purposes of his employment only and did not burden the right protected by the Second Amendment.

-13-

## POINT III

## PLAINTIFF'S NEGLIGENCE CLAIMS AGAINST THE PORT AUTHORITY, DR. FRANCIS AND DR. SILVER SHOULD BE DISMISSED SINCE THEY OWED PLAINTIFF NO DUTY

Plaintiff's complaint alleges that the Port Authority, Dr. Francis and Dr. Silver were negligent for failing to provide "an accurate medical opinion about Plaintiff's mental health" and that "[t]his has proximately caused Plaintiff to be unable to secure employment in the private sector in the security industry." Kromm Decl., Ex. "G" at ¶¶ 42, 44. In order to state a claim for negligence under New York law, plaintiffs must allege: (1) existence of a duty owed by defendant to plaintiff; (2) breach of that duty; and (3) that the breach was the proximate cause of plaintiff's injury. *See Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000)).

Generally, a doctor owes a duty of care only to those being treated by that doctor. *McNulty v. City of New York*, 100 N.Y.2d 227, 232 (N.Y. 2003) (holding doctor had no duty to advise friend of patient to seek treatment to prevent her from contracting meningitis from the patient). New York courts have held that doctors do not owe a duty to a patient if the physician is acting on behalf of an employer to examine an employee. *See Forrester v. Zwanger-Pesiri Radiology Group*, 274 A.D.2d 374, 374 (2d Dep't 2000) ("Generally, no physician-patient relationship exists if the physician is retained solely to examine an employee on behalf of an employer."); *Violandi v. City of New York*, 184 A.D.2d 364, 365 (1st Dep't 1992) ("A physician-patient relationship does not exist where the examination is conducted solely for the purpose or convenience or on behalf of an employer…."); *Lee v. City of New York*, 162 A.D.2d 34 (2d Dep't 1990) ("The physician patient relationship does not exist if the physician is retained solely to examine an employee on behalf of an employer.")

Plaintiff's negligence claims against the Port Authority, Dr. Francis and Dr. Silver fail as a matter of law because he cannot establish that either doctor breached a duty to Plaintiff and that

he did not receive "an accurate mental health opinion." Dr. Francis and Dr. Silver are not treating physicians, but rather act on behalf of their employer, the Port Authority, to place appropriate work restrictions on employees and determine their fitness for duty.

Furthermore, during the course of Plaintiff's employment, he never provided the Port Authority with a contradictory medical opinion. On January 8, 2010, eleven days before Plaintiff retired, Dr. Weinberg wrote a letter to the Port Authority discussing Plaintiff's counseling. *See* Kromm Decl., Ex. "H". Dr. Weinberg's letter stated: "Session content center on his interest in having gun restrictions rescinded." However, "Mr. Montalbano entered psychotherapy to help him deal with what he feels was an unwarranted overreaction by the PA to a family dispute." *Id*. Dr. Weinberg's letter falls short and states nothing to warrant modification of Plaintiff's gun restriction.

### POINT IV

### PLAINTIFF'S DEFAMATION CLAIMS AGAINST SERGEANT KOHLMANN AND INSPECTOR GUARNIERI ARE LEGALLY INSUFFICIENT AND SHOULD BE DISMISSED

In Count IV of the Complaint, Plaintiff alleges Sergeant Kohlmann slandered him when he falsely "claimed that Plaintiff menaced another employee"[1] which "helped lead to Defendant Port Authority providing an inaccurate medical opinion." Kromm Decl., Ex. "G" at ¶¶ 47-49. Under New York law, in order to state a claim for slander, Plaintiff must show:

> (1) that a defamatory statement of fact was made concerning [Plaintiff]; (2) that the defendant published that statement to a third party; (3) that the statement was false; (4) that there exists some degree of fault; (5) and that there are special damages or that the statement is defamatory *per se, i.e.* it disparaged the plaintiff in the way of his or her office, profession or trade.

---

[1] Plaintiff's claim that Sgt. Kohlmann's report dated March 10, 2009 stated "Plaintiff menaced another employee" is simply false. Sgt. Kohlmann's report clearly states that the incident with the knife occurred in front of Sgt. Kohlmann "after Forte left Montalbano…." *See* Sgt. Kohlmann's Handwritten Report Dated March 10, 2009, Exhibit "I" to Kromm Decl; *see also* Kohlmann tr. 20, Exhibit "D" to Kromm Decl.

*Ello v. Singh*, 531 F. Supp. 2d 552, 575 (S.D.N.Y. 2007) (citation omitted).

Plaintiff's complaint alleges that Inspector Guarnieri libeled him when he "knowingly furnished a false written complaint about Plaintiff's conduct." Kromm Decl., Ex. "G" at ¶ 53. In order to state a claim for libel under New York law, a plaintiff must show:

> (1) the preparation of a statement by the defendant; (2) the statement refers to the plaintiff; (3) the statement is of a defamatory nature; (4) the statement is false; (5) publication of the statement to a third party; (6) malice; and (7) damages. *See, e.g., Hairston v. Bancorp Inc.*, 1992 WL 368789 at *2 (N.Y. Sup.Ct. April 15, 1992); *Box Tree South, Ltd. v. Bitterman*, 873 F. Supp. 883, 844 (S.D.N.Y. 1995). Where a libel cause of action is defamatory *per se*, special damages need not be pleaded. *See Wehringer v. Allen-Stevenson School*, 360 N.Y.S.2d 429 (N.Y.A.D. 1974) *aff'd*, 340 N.E.2d 478 (N.Y. 1975).

*Keough v. Texaco, Inc.*, 1999 WL 61836 at *6 (S.D.N.Y. Feb. 10, 1999).

Plaintiff's defamation claims against Sgt. Kohlmann and Inspector Guarnieri are deficient New York State recognizes a "qualified privilege for allegedly defamatory statements made between persons who share a common interest in the subject matter." *Vaughn v. American Multi Cinema, Inc.*, 2010 WL 3835191 at *3 (S.D.N.Y. Sept. 13, 2010) (citations omitted). New York Courts have consistently held that: "[c]ommunications by **supervisors or co-workers** made in connection with the evaluation of an employee's performance, **including allegations of employee misconduct** and communications regarding the reasons for an employee's discharge, fall within the privilege." *Albert v. Loksen*, 239 F.3d 256, 272 (2d Cir. 2001) (emphasis added). "It is essential for the functioning of a business that 'an employer's agents must be free, within certain bounds, to communicate with it regarding the performance of persons in its employ.'" *Vaughn*, 2010 WL 3835191 at *3 (quoting *Mandelblatt v. Perelman*, 683 F. Supp. 379, 385 (S.D.N.Y. 1988); *see also Albert*, 239 F.3d at 268 ("No workplace, we think, can operate effectively unless the employers and employees who work there have the ability to speak freely in evaluating the actions of their employees and co-employees."); *Ello*, 531 F. Supp. 2d. at 576

-16-

(S.D.N.Y. 2007) ("In the employment context, the qualified privilege is recognized as protecting the free flow of information.").

> As the District Court noted in *Vaughn v. American Multi Cinema, Inc.*:
>
> The privilege may be forfeited if the defendant makes "a false, defamatory statement with 'malice' of either the common-law or constitutional variety." *Albert*, 239 F.3d at 272. "Common-law malice means spite or ill will and defeats the privilege only if it is the one and only cause for the publication." *Id.* (internal quotation marks and citations omitted). "Constitutional or 'actual' malice means publication with knowledge that the statement was false or reckless disregard of whether it was false or not." *Id.* (internal quotation marks and citations omitted). Under New York defamation law, "[m]ere conclusory allegations, or charges based upon surmise, conjecture, and suspicion are insufficient to defeat the claim of qualified privilege." *Thai v. Cayre Group, Ltd.*, No. 10 Civ. 269 (SAS), 2010 WL 2710615, at *3 (S.D.N.Y. July 8, 2010) (quoting *Golden v. Stiso*, 279 A.D.2d 607, 720 N.Y.S.2d 164, 164 (2d Dep't 2001)).

*Vaughn*, 2010 WL 3835191 at *3.

Plaintiff's allegations are devoid of even a shred of evidence that Sgt. Kohlmann or Inspector Guarnieri acted with actual malice in response to the incident that took place on March 9, 2009. Plaintiff's allegations certainly do not rise above the "mere conclusory allegations … based upon surmise, conjecture, and suspicion" that District Courts in the Southern District have held do not defeat a qualified privilege claims. *Vaughn*, 2010 WL 3835191 at *3 (quoting *Cayre Group*, 2010 WL 2710615 at *3). Furthermore, the evidence clearly shows that Plaintiff was placed on the gun restriction after his August 12, 2009 domestic dispute which led to the New York City Police Department responding to his home, *see* 56.1 St., ¶¶ 16-19, not the March 9, 2009 incident involving inappropriate behavior directed at his supervisor, Sgt. Kohlmann.

-17-

## <u>CONCLUSION</u>

For all the foregoing reasons, the Defendants respectfully submit that summary judgment should be granted dismissing Plaintiff's complaint in its entirety.

Dated:      New York, New York
            June 30, 2011

                                        Yours etc.

                                        JAMES M. BEGLEY, ESQ.
                                        *Attorney for Defendants*
                                        The Port Authority of New York and New Jersey,
                                        Dr. Doris Francis, Dr. Francis Silver, Inspector
                                        Michael Guarnieri and Sergeant Kenneth Kohlmann


                                        By: <u>S/ David R. Kromm</u>
                                            David R. Kromm, Esq. (DRK-9118)
                                            225 Park Avenue South, 13th Floor
                                            New York, New York 10003
                                            Telephone:  (212) 435-3483

To:      Patricia Finn, Esq.
         Patricia Finn Attorney, P.C.
         *Attorney for Plaintiff*
         450 Piermont Avenue
         Piermont, New York 10968
         Telephone No.:  (845) 398-0521

-18-