UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JOHN MONTALBANO,

                        Plaintiff,

v.

THE PORT AUTHORITY OF NEW YORK AND
NEW JERSEY; DR. DORIS FRANCIS,
INDIVIDUALLY; DR. FRANCINE SILVER,          10 CIV 5973-JGK-GMG
INDIVIDUALLY; INSPECTOR MICHAEL
GUARNIERI, INDIVIDUALLY; SGT. KENNETH
KOHLMANN, INDIVIDUALLY,

                        Defendants.
-------------------------------------------------------------------X


MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT and in SUPPORT OF PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

1

TABLE OF CONTENTS

INTRODUCTION

STATEMENT OF FACTS

POINT ONE

Plaintiff's Claims under the Second and Fourteenth Amendments of the United States Constitution are not defeated by Defendants' Motion for Summary Judgment

POINT TWO

Plaintiffs § 1983 Claims Brought Under Due Process Clause of the Fourteenth Amendment of the US Constitution are valid, and not defeated by Defendants' Motion for Summary Judgment

POINT THREE

Plaintiff's Negligence Claims Against Defendants Port Authority, Dr. Francis and Dr. Silver are valid, and not defeated by Defendants' Motion for Summary Judgment

POINT FOUR

Plaintiffs' Defamation Claims against Sergeant Kolmann and Inspector Guarnieri are Legally Sufficient

CONCLUSION

INTRODUCTION

This action involves both intentional harassment torts conducted by the individual Defendants under the supervision of Defendant Port Authority of New York and New Jersey (hereinafter "Port Authority") and denial of Plaintiff's constitutionally protected rights and civil rights pursuant to 42 U.S.C. § 1983. Defendant Port Authority has violated Plaintiff's rights under the federal constitution's Second and Fourteenth Amendments and applicable state law. Plaintiff claims that there is no rational basis for Defendant Port Authority to refuse to modify its mental health evaluation of him, which is preventing him from obtaining employment within the private sector in a security position because he is unable to obtain a handgun permit required for such a position. The Complaint therefore is based upon Defendants' refusal to amend a mental health assessment and issue the certificate of good standing, the latest in a continuing course of conduct of harassment in the workplace that led to Plaintiff's abrupt retirement in January of 2010.

STATEMENT OF FACTS

In March 2009, a Port Authority PBA trustee met Plaintiff by the entrance door of the workplace to tell Plaintiff that he was ordered to meet with a psychologist. Plaintiff was by informed by the psychologist that Defendant Sgt. Kolmann falsely alleged that he menaced a co-worker with a weapon. Plaintiff denies these allegations that were made in bad faith. In nearly thirty-two years of dedicated service for Defendant Port Authority, from 1978 to 2010. Plaintiff had never received a negative incident report or other written comment until the conduct mentioned in this Complaint occurred, except for a violation involving parking and fueling a Port Authority vehicle located at the airport. Exh "I" Kromm Decl.. As part of the disciplinary

actions taken by the defendant regarding the allegation of menacing by Defendant Sgt. Kolmann, Plaintiff was forced to meet with Defendant Inspector Michael Guarnieri who collaborated with Defendant Sgt. Kolmann to formulate the false allegations in the above paragraphs. Upon Plaintiff's objecting to the false allegations, Defendant Inspector Guarnieri "wrote up" Plaintiff, submitting a false written complaint about Plaintiff for disciplinary purposes. Subsequently, Plaintiff was reassigned from Building 254 to Building 269, losing his seniority in the process, for no legitimate reason, as a result of Defendant Port Authority, Sgt. Kolmann, and Guarnieri's arbitrary, unreasonable and capricious conduct (Montabalno tr. 80, Exhibit "A" to Kromm Decl.)

Prior to the above-described incident with Defendant Sgt. Kolmann in the summer of 2009, the police arrived at Plaintiff's household as a result of an unfortunate verbal altercation between Plaintiff and his daughter. (Montabalno tr. 82-85, Exh. "A" to Kromm Decl).. No criminal charges were filed against the plaintiff as a result of the incident (Montabalno aff. Ex. "1" to Finn Decl).. As a result of the incident report, Defendant Port Authority forced Plaintiff to meet with Defendant Dr. Francis, another mental health professional employed by Defendant Port Authority.  Plaintiff alleges that Defendant Dr. Francis was loud, rude, arrogant and verbally combative toward Plaintiff (Compl para 20).  After the interview with Dr. Francis, in September of 2009, Plaintiff was deemed to be "fit for work with restrictions," the restriction being firearms on duty only, by Defendant Dr. Francis.  Plaintiff maintains that such a classification was arbitrary, unreasonable, and capricious.  *See* Exhibit 1 to Complaint, Work Classification.

Dr. Francis refused to modify the designation restricting Plaintiff's use of firearms. Thereafter, Plaintiff also met with Defendant Dr. Silver, who reports to Dr. Francis and also was rude to Plaintiff, failing to provide necessary psychological help that ultimately led to Plaintiff having to visit with his own personally-selected psychologist outside of work. Dr. Silver

4

continuously refused to correct the firearms restriction as well.  Neither Defendant Dr. Silver nor Defendant Dr. Francis would permit Plaintiff to switch doctors, after Plaintiff asked twice to switch.  When asked, Dr. Francis became angry and insisted that she was "the boss" and Plaintiff would have to see her.  Ironically, defendant Dr. Francis then ordered Plaintiff to see his own Psychologist, Dr. Martin Weinberg, but she disregarded anything he said or wrote, specifically what he wrote in a general letter of observations about Plaintiff and his fitness to carry a firearm. *See* Exhibit 2 to Compl, Letter from Dr. Weinberg.

In January 2010, Plaintiff retired from Defendant Port Authority, but still desires to work in the security field and desires a handgun permit for work and for home protection.  As a result, on or about January 15, 2010, Plaintiff filled out a Handgun License Application form, and submitted it to the City of New York. Unfortunately, Plaintiff was informed that the form could not be approved because Defendant Port Authority had not issued the proper certification and documentation of good standing required by the city to issue a handgun permit to a retired police officer (Montabalno Affidavit, Ex "One" Finn Decl.)

On or about February 16, 2010, despite Plaintiff's excellent track record of dedicated service and his positive psychological evaluation by Dr. Weinberg, Defendant Port Authority refused to review or adjust its findings (issue a Certificate of Good Standing) on Plaintiff's sound mental health, claiming that it would not provide an opinion on an individual who was not currently an employee.  (*See* Exhibit 3 to Complaint, February 16, 2010 Letter from Port Authority.)  On or about April 20, 2010, within ninety (90) days of Defendant Port Authority's refusal to correct its opinion on Plaintiff's mental health, Plaintiff's counsel served a Notice of Claim upon all Defendants to this cause of action via certified mail.  Defendants have not

5

responded to Plaintiff's Notice of Claim.  Such Notice of Claim was therefore served at least sixty (60) days before the filing of this cause of action.

POINT ONE

PLAINTIFF'S CLAIMS UNDER THE SECOND AND FOURTEENTH AMENDMENT<br>of the UNITED STATES CONSTITUTION ARE SUPPORTED BY THE EVIDENCE AND<br>ARE NOT OVERCOME BY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff's Complaint alleges violations of the Second and Fourteenth Amendments of the United States Constitution by the Defendants.  (Compl. Para. 4)  The Second Amendment provides in full:  "A well regulated Militia, being necessary to the security of a free state, the right of the people to keep and bear Arms, shall not be infringed."  US Const., Amend II.  The Fourteenth Amendments' Due Process Clause provides that no state shall "deprive any person of life, liberty or property, without due process of law"  U.S. Const.  Amen. XIV.  Defendant Port Authority has impeded and chilled Plaintiff's constitutional rights, specifically, to now lawfully possess a firearm by refusing to issue a Certificate of Good Standing for his years of service at the Port Authority as a police officer, a requirement necessary by the City of New York for obtaining a handgun permit for both in home possession and for work as a security guard.

Defendants move this Court to dismiss Plaintiffs' claim arguing that Defendants "determination that Plaintiff would be restricted from bringing his PAPD firearm to his home only applied during his employment as a Port Authority Police Officer.  It does not prohibit the ownership and possession of a firearm in his home for any purpose whatsoever now that he is retired.  Accordingly, the Port Authority's mental health assessment of Plaintiff was for purposes of his employment only and did not burden the right protected by the Second Amendment." Def.

6

Memorandum in Support of Motion, page 13.)  This reasoning and factual analysis however is in fact misguided and incorrect.

Defendants' reasoning and reliance on *Heller, 554 U.S. 570 (2008)* in the instant motion for summary judgment is in error. While it may be true the Port Authority's mental health restriction on Plaintiff's weapon was in the first instance regarding his employment as a Port Authority Police Officer, it has consequently also prohibited the ownership and possession of a firearm in both the home and for work purposes now that plaintiff is retired. (Montabalno Affidavit, Exh One, Finn Decl.).  Moreover, the weight of the evidence establishes that the gun restriction was arbitrary, capricious and improper.  It is alleged in the Complaint due to the actions of defendant in formulating the mental health assessment of the Plaintiff, subsequently, defendant would not issue to Plaintiff the Certificate of Good Standing at his retirement required for a handgun permit.  Thus, without this certificate plaintiff cannot obtain a handgun permit for any purpose (home or work) from the City of New York without said Certificate of Good Standing from the defendant now that he is retired. (Montabalno Affidavit, Exh One, Finn Decl.).   This fact is not overcome in the instant summary judgment motion, and is refuted herein by sworn testimony of the plaintiff.  Defendants gloss over this important fact in their moving papers.  Defendants have failed to address throughout their motion how the mental health assessment and withholding the Certificate of Good Standing has chilled Plaintiff's Second Amendment rights now that he is retired.  If the actions of the Defendant were restricted to Plaintiff's tenure as a Port Authority Police Office, as the movants claim, there would be no claim for the constitutional violations plaintiff is enduring now that he is retired.  Plaintiff cannot obtain a handgun permit for any purpose, home or work, without a Certificate of Good Standing from the Defendant. (Montalbano Affidavit, Exh "One" Finn Decl).

7

New York City is the locale in which Plaintiff lives and intends to work in the security business. Defendant Port Authority and the individual Defendants are state actors (Def. 56.1 statement para 3). Said Defendants have arbitrarily, unreasonably and capriciously denied Plaintiff an accurate mental health opinion, and refuse to give him a Certificate of Good Standing preventing him from seeking security work in the private sector. Based on the forgoing, Defendants have violated Plaintiff's Second and Fourteenth Amendment Rights entitling Plaintiff to summary judgment on these grounds alone.

POINT TWO

PLAINTIFFS § 1983 CLAIMS BROUGHT UNDER DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT OF THE US CONSTITUTION ARE SUPPORTED BY THE EVIDENCE AND ARE NOT DEFEATED BY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Without a Certificate of Good Standing being issued by the Port Authority, Plaintiff is unable to obtain a gun permit, for any purpose, from the City of New York. § 1983 creates a cause of action for anyone subjected "to the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws" by a person acting under color of state law. 42 USC Sec 1983. Plaintiff has established individual liability under § 1983 because Defendant Port Authority is a state actor, as it is a public corporation incorporated by two states, and the individual defendants are state actors by acting under the policy and supervision of Defendant Port Authority (Def. 56.1 statement para 5). Defendants have arbitrarily, unreasonably and capriciously denied Plaintiff an accurate mental health opinion, preventing him from seeking security work in the private sector. Defendants arbitrarily and capriciously have refused to give

8

Plaintiff a certificate of good standing upon his retirement required for obtaining a hand gun permit from the City of New York making them liable under 42 U.S.C. § 1983.

Plaintiff has shown that a federally protected right has been violated. To prevail in a § 1983 action alleging a violation of plaintiff's due process rights, plaintiff must demonstrate "the existence of a federally protectable right and the denial of such a right in the absences of either procedural or substantive due process." *Natalie vs Town of Ridgefield, 170 F.3d 258, 262 (2d Cir 1999).* It is undisputed that Defendant and its employees are state actors (Def. 56.1 statement para 3). Plaintiff's right to possess a handgun, for any lawful purpose, is also a protected under the Second Amendment. Plaintiffs' unrefuted and sworn testimony is that he applied for a Handgun permit from the City of New York and it was declined because he lacks a Certificate of Good Standing from the Port Authority for his years of service as a Port Authority Police Officer. (Montalbano Affd. Exh "One" Finn Decl). Thus, Defendants actions give rise to the § 1983 claim by Plaintiff.

Again, Defendant's misguided reasoning attempts to lure this Court into dismissing this valid § 1983 as follows: "Plaintiff fails to identify the constitutional interest at stake in his substantive due process claim other than claiming generally that the gun restriction placed on him when he was a Port Authority employee is preventing him from obtaining a handgun license in New York City and is "preventing him from seeking security work in the private sector." See Kromm Decl, Ex. "G" at pp 29, 38-39. It is clear that Defendants are state actors operating under color of state law, and it is also clear that the right to lawfully carry a handgun is protected by the Second Amendment. Defendant argues that "Plaintiff's gun restriction was a condition of his employment with PAPD after he was involved in two domestic incidents of a physical nature with his family. See 56.1 p 18. One of these incidents [allegedly] involved his threatening his

9

family members with a gun.  See 56.1 st. 6.  Therefore, as discussed *supra* it follows that Plaintiff's gun restriction, a condition of his employment with PAPD, did not conflict with a substantive due process right under the Fourteenth Amendment, *See also Boss v Kelly, 2009, WL 76501 at \*1 (2d Cir. Jan 13, 2009).*  Def SJM page 7,8.

Defendant states that plaintiff's employment related gun restrictions were based on two domestic incidents and out of concern for his family's safety.  See Francis tr. 18, Ex "C" to Kromm Decl.  The Court will note that despite this so-called "concern for the family's safety," the defendant did allow for the plaintiff to continue to carry a weapon while at work raising the question of concern of the public at large, if in fact the plaintiff was unfit to carry a weapon.  Also of great importance, is that the NYPD never filed any charges against the Plaintiff for these incidents that defendant now claims was the basis for the gun restriction, nor did Port Authority Police, including Defendant Kolmann, arrest the Plaintiff (Kolmann tr. Pg. 41 Exh.D,  Kromm Decl)..  Moreover, Plaintiff and his private psychologist both testified that the allegations of family members were later recanted, and most significantly, despite this "concern for the family's safety, no one from Port Authority police ever contacted the Plaintiffs' family regarding the incident to inquire of the incident or their safety, including Dr. Francis or Dr. Silver who opined on Plaintiffs' mental health and recommended the gun restriction (Weinberg letter, Exh."H" Kromm Decl, Plaintiff's 56.1 Statement para. 31).

Plaintiff had a stellar record of service while an employee of the defendant.  These unsubstantiated domestic incidents and false claims of menacing as grounds for withholding the certificate of good standing are unsupported by the weight of the evidence and controverter by sworn testimony of Plaintiff and Dr. Weinberg. (Weinberg letter, Ex. "H" Kromm Decl). Moreover, the sec 1983 claim involves the burdening of plaintiff's second and fourteenth

10

amendment rights, a burden occurring presently, not while employed by defendant, but after his retirement.  Plaintiff's sworn testimony and his affidavit are undisputed evidence that defendant's actions have prevented him from obtaining a gun permit in the City of New York.

Since the Complaint involved deprivation of rights and freedoms protected by the Constitution of the United States, Plaintiff had no legal requirement to exhaust administrative remedies and appropriately brought this claim in the district court.  Simply because a CPLR Article 78 proceeding may have been available to address post deprivation rights, does not act as a bar to plaintiff's claim in the federal court in this lawsuit on his other Constitutional and pendant state claims.  The general rule is that § 1983 does not require plaintiffs with federal or conditional claims to first exhaust state judicial or administrative rememdies… *See Hellenic Am Neighborhood Action Comm., 101 F3d at 881.*  However, even if an Article 78 proceeding was brought, plaintiffs Second Amendment Claims could not have been satisfied by the Article 78 proceeding making the action in the District Court appropriate without an exhaustion of administrative remedies.  Likewise, for the aforementioned reasons and due to a strong belief Plaintiff was being discriminated against by his employer, plaintiff did not file a union grievance based on futility nor was he required to bring an Article 78 proceeding as a pre-requisite to this lawsuit. *See Vaughan, generally.*

Defendant's actions were indeed arbitrary and capricious basing a gun restriction on unsupported and non-investigated incident reports especially in light of Plaintiff's unblemished career of service as a Port Authority Police Officer.  Plaintiff voluntarily consented to the gun restriction to avoid controversy with his employer, and plaintiff was never informed he had a right to appeal the decision of a gun restriction internally at the Port Authority (Def. 56.1 Statement para 17).  More important, no criminal charges were ever filed against the Plaintiff

11

stemming from any of the alleged incidents. Plaintiff does indeed have a protected interest in the Certificate of Good Standing required by the City of New York for obtaining a handgun permit since it is a pre-requisite for obtaining a handgun. (Montabalno Affd, Exhibit "One" Finn Decl). The defendants' determination not to issue the Certificate of Good Standing based on the arbitrary and capricious mental health evaluation, which was later controverter by the Dr. Weinberg's letter requested by defendants, does indeed, burden plaintiff's constitutional rights protected by the Second Amendment.

     Plaintiff has demonstrated through sworn testimony and the supporting testimony from his psychiatrist that the mental health evaluation was improper, arbitrary and capricious. Deposition testimony of the defendants demonstrates it is indeed the policy of the Port Authority to allow their psychiatrists to work unsupervised while a supervising doctor is out on maternity leave which is the facts in this case. It is also defendant's policy not to investigate incident reports or interview witnesses who make statements that are the basis of the plaintiffs' gun restriction (Silver tr. Pgs 36 – 37, lines 24 – 28. Exh "C" Kromm Decl.), and not to inform Plaintiff of his right to appeal the internal decision of the Port Authority to restrict his gun use (Silver tr. Pgs 58, 59, lines 22 – 25. Exh "C" Kromm Decl. Dr. Silver testified that she was unsupervised during her review of plaintiff's mental health since her supervisor Dr. Francis was out on maternity leave (Silver tr. Pgs 9-12, Exh "C" Kromm Decl). Dr. Silver also testified that she never inquired further with the NYPD or the family members who made the complaint despite ordering the gun restriction on the plaintiff. (Plaintiffs 56.1 Statement, Para 35). In fact, Dr. Silver testified that she requested a letter from Dr. Weinberg, plaintiff's private psychologist which stated the Plaintiff "does not present in a dangerous matter," but concluded this was insufficient and did not follow up further with Dr. Weinberg. There is confusing testimony

12

thereafter as to whether or not the letter was received prior to retirement by the plaintiff. However, the letter of Dr. Weinberg is dated December 29, 2010, and plaintiff retired eleven days after on January 10, 2011. It would appear that the exculpatory letter requested from Dr. Weinberg was received by defendants, but as a policy matter, was disregarded. In the defendants' instant motion, defendants state that "during the course of the Plaintiff's employment, he never provided the Port Authority with a contradictory medical opinion" Def. Motion for Summary Judgment pg. 13, para 1. However, this is incorrect. Dr. Weinberg, at the request of Dr. Silver, provided the exculpatory letter regardless of whether or not Dr. Silver thought it was acceptable. It was provided and did state Plaintiff "does not present in a dangerous manner. (Weinberg letter, Exh "H" Kromm Decl.). Nothing further was requested by Defendants from Dr. Weinberg in furtherance to his December 29th letter received by the defendants prior to plaintiff's retirement.
POINT FOUR

PLAINTIFF'S DEFAMATION CLAIMS AGAINST SERGEANT KOHLMAN AND INSPECTOR GUARNIERI ARE LEGALLY SUFFICIENT.

In Count IV of the Complaint, Plaintiff alleges Sgt. Kolmann slandered him when he falsely "claimed that Plaintiff menaced another employee" which "helped lead to Defendant Port Authority providing an inaccurate medical opinion." (Comp. para 49). Under New York law, in order to state a claim for slander, Plaintiff must show:

(1) that a defamatory statement of fact was made concerning [Plaintiff]; (2) that the defendant published that statement to a third party; (3) that the statement was false; (4) that there exists some degree of fault; (5) and that there are special damages or that the statement is defamatory *per se, i.e.* it disparaged the plaintiff

13

in the way of his or her office, profession or trade…*Ello v. Singh*, 531 F. Supp. 2d 552, 575 (S.D.N.Y. 2007) (citation omitted).

Plaintiff's complaint also alleges that Inspector Guarnieri libeled him when he "knowingly furnished a false written complaint about Plaintiff's conduct." Kromm Decl., Ex. "G" at ¶ 53. In order to state a claim for libel under New York law, a plaintiff must show:

(1) the preparation of a statement by the defendant; (2) the statement refers to the plaintiff; (3) the statement is of a defamatory nature; (4) the statement is false; (5) publication of the statement to a third party; (6) malice; and (7) damages. *See, e.g., Hairston v. Bancorp Inc.*, 1992 WL 368789 at *2 (N.Y. Sup.Ct. April 15, 1992); *Box Tree South, Ltd. v. Bitterman*, 873 F. Supp. 883, 844 (S.D.N.Y. 1995). Where a libel cause of action is defamatory *per se,* special damages need not be pleaded. *See Wehringer v. Allen-Stevenson School*, 360 N.Y.S.2d 429 (N.Y.A.D. 1974) *aff'd,* 340 N.E.2d 478 (N.Y. 1975). *Keough v. Texaco, Inc.*, 1999 WL 61836 at *6 (S.D.N.Y. Feb. 10, 1999).

Herein, Defendants' claim of qualified immunity must be deemed waived because the defamatory statements were made with malice. As the District Court noted in *Vaughn v. American Multi Cinema, Inc.*: The privilege may be forfeited if the defendant makes "a false, defamatory statement with 'malice' of either the common-law or constitutional variety." *Albert*, 239 F.3d at 272. Plaintiffs' sworn testimony is that the incident never occurred. Dr. Silver was unable to corroborate Sgt. Kolmann's allegations of menacing (Silver tr. Pgs 36 – 37, lines 24 – 28. Exh "C" Kromm Decl.). Plaintiff's testimony is that he never brandished a knife or made any threatening gestures toward anyone. (Montalba no aft, Ex. "One" Finn Decl.) Further, supporting this claim is the fact that no other witnesses collaborated the events described by Sgt. Kolmann although his handwritten report indicates it was a co-worker allegedly threatened by the Plaintiff. Even more curious is the fact that if Plaintiff did indeed make a threatening gesture toward a co-worker why wasn't he arrested by Sgt. Kolmann or any other Port Authority police officer at the time of the incident. It is remarkable that no weapon was ever recovered. Sgt.

14

Kolmann when questioned during depositions watered down his version of the events that took place and stated during depositions when asked if he felt threatened he said "NO." (Kolmann tr. Pgs 47, lines 5. Exh "D" Kromm Decl.),

## CONCLUSION

For all of the foregoing reasons, the Plaintiffs' respectfully request that the Plaintiff's cross motion for summary judgment be granted in its entirety, and defendants' motion for summary judgment be denied.

Dated:      Piermont, New York
            August 2, 2011

                                                    Yours etc.

                                                    By: s/ Patricia Finn, Esq. (PF0435)
                                                    Patricia Finn Attorney, P.C.
                                                    *Attorney for Plaintiff*
                                                    450 Piermont Avenue
                                                    Piermont, New York 10968

To:   JAMES M. BEGLEY, ESQ.
      *Attorney for Defendants*
      The Port Authority of New York and New Jersey,
      Dr. Doris Francis, Dr. Francis Silver, Inspector
      Michael Guarnieri and Sergeant Kenneth Kolmann

      David R. Kromm, Esq. (DRK-9118)
      225 Park Avenue South, 13th Floor
      New York, New York 10003

Telephone: (212) 435-3483

16